Case 0:17-cv-60468-BB   Document 51   Entered on FLSD Docket 05/07/2018   Page 1 of 11
Case: 17-12535   Date Filed: 05/07/2018   Page: 1 of 2

FILED BY _HH_ D.C.

May 7, 2018

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 07, 2018

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 17-12535-AA
Case Style: Asker Asker, et al v. Seminole Tribe of Florida, Inc, et al
District Court Docket No: 0:17-cv-60468-BB

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

UNITED STATES COURT OF APPEALS
For the Eleventh Circuit

_____

No. 17-12535
_____

District Court Docket No.
0:17-cv-60468-BB

ASKER B. ASKER,
BASSAM ASKAR,
KOUSAY ASKAR,
SHERA ASSHAQ,
ALEXANDRA ASKAR,
AWHAM ASKAR,
JAMES E. GILLETTE, JR.,
THOMAS HORVATIS,
RICHARD WIGGINS,

                                                Plaintiffs - Appellants,

versus

SEMINOLE TRIBE OF FLORIDA, INC.,
AMERICAN EXPRESS COMPANY,
SEMINOLE TRIBE OF FLORIDA TRIAL
COURT, HON. MOSES B. OSCEOLA,
TRIBUNAL CHIEF JUDGE,

                                                Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida
_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: April 06, 2018
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna Clark

**ISSUED AS MANDATE 05/07/2018**

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12535
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cv-60468-BB

ASKER B. ASKER,
BASSAM ASKAR,
KOUSAY ASKAR,
SHERA ASSHAQ,
ALEXANDRA ASKAR,
AWHAM ASKAR,
JAMES E. GILLETTE, JR.,
THOMAS HORVATIS,
RICHARD WIGGINS,

                          Plaintiffs - Appellants,

versus

SEMINOLE TRIBE OF FLORIDA, INC.,
AMERICAN EXPRESS COMPANY,
SEMINOLE TRIBE OF FLORIDA TRIAL
COURT, HON. MOSES B. OSCEOLA,
TRIBUNAL CHIEF JUDGE,

                          Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 6, 2018)

Before WILLIAM PRYOR, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiffs-appellants filed this action in federal court asserting that the Seminole Tribe of Florida, Inc. ("Tribe") and the Seminole Tribe of Florida Trial Court ("Tribal Court") lacked the authority to enforce a third-party subpoena *duces tecum* against a non-Indian person or entity outside the reservation. Because we conclude that appellants failed to establish Article III standing—and therefore, that the district court lacked subject-matter jurisdiction over appellants' suit—we affirm the district court's orders dismissing appellants' action and denying their motion to vacate or modify.

**I**

The Tribe originally filed an action in the Tribal Court alleging that Evans Energy Partners, LLC ("Evans"), with whom the Tribe had partnered in a joint petroleum business, had breached a management agreement and loan agreement. Although the agreements permitted Evans to opt to resolve disputes through arbitration, they specified that in the event Evans didn't choose to arbitrate, the Tribal Court would be the proper litigation venue. During discovery, the Tribe

noticed its intent to serve a subpoena *duces tecum* to obtain relevant financial records from American Express Company ("AMEX")—a third-party non-Indian entity.  The Tribe contended that AMEX's records would help establish one of its key allegations—namely, that Evans had breached the management agreement by fraudulently seeking and receiving reimbursements from the Tribe for AMEX charges unrelated to its duties.  The subpoena requested financial information relating to multiple AMEX accounts—including accounts belonging to appellants here—because they were linked to the business account of Evans's managing member, Kousay Askar.

Rather than moving to quash or otherwise challenging the subpoena in the Tribal Court, appellants filed this parallel lawsuit in federal district court against the Tribe, the Tribal Court, the Tribal Court's chief judge, and AMEX.  In their federal-court complaint, appellants sought (1) an injunction barring enforcement of and compliance with the subpoena and (2) a declaration that the Tribe and the Tribal Court lacked the authority to issue and enforce the subpoena against the non-Indian appellants outside the reservation.

The Tribe, along with the Tribal Court and its chief judge, filed separate motions to dismiss for lack of subject-matter jurisdiction and for failure to state a claim.  AMEX—which as a mere document custodian had no real interest in the underlying litigation—made no appearance, and appellants moved for entry of

3

default against it, which the clerk of court entered as a matter of course. Despite having requested and received an extension of time to respond to the motions to dismiss, appellants never did so; instead, they voluntarily dismissed the Tribe, the Tribal Court, and the chief judge under Federal Rule of Civil Procedure 41(a)(1), leaving AMEX as the only remaining defendant in the case. Before appellants moved the district court for default judgment against AMEX, the court dismissed the action in its entirety.

Appellants filed a motion to vacate or modify the district court's dismissal order. They argued that the voluntary dismissals of the Tribe, the Tribal Court, and the chief judge did not affect the default that the clerk had entered against AMEX and that the case should therefore be reinstated.

The district court issued an order to show cause, directing appellants to describe the relief that they intended to seek against AMEX. Appellants responded that they intended to seek both a declaration that complying with the subpoena would be unlawful and an injunction prohibiting AMEX from producing their financial records.

The district court denied appellants' motion to modify or vacate on the grounds that appellants had failed to establish that they had standing to sue AMEX or that they had properly "exhausted" their tribal-court remedies. As an initial matter, the district court pointed out that appellants' complaint did not allege that a

subpoena had actually ever been issued to AMEX; therefore, the court concluded, appellants could not show the injury-in-fact, causation, and redressability necessary to satisfy Article III's case-or-controversy requirement.

The district court separately held that although appellants' claims were premised on the contention that the Tribal Court lacked jurisdiction to enforce a subpoena seeking information regarding non-Indians from a non-Indian entity, there was no indication that appellants had raised the jurisdictional issue in the Tribal Court in the first instance, as Supreme Court precedent typically requires. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 855–56 (1985) (holding that the examination of the "existence and extent of a tribal court's jurisdiction . . . should be conducted in the first instance in the Tribal Court itself."). Accordingly, the district court reasoned that appellants had failed to exhaust tribal-court remedies as required by Supreme Court precedent.

Appellants now appeal the district court's orders dismissing their suit and denying their motion to vacate or modify, arguing that the court abused its discretion by *sua sponte* dismissing the action in its entirety without giving them sufficient notice, thereby depriving them of their opportunity to correct any deficiencies in their complaint and foreclosing their ability to seek relief against AMEX. Appellees respond that appellants had ample notice that they had no claim against AMEX based on appellees' motions to dismiss and the district court's

order to show cause. They also contend that appellants didn't need leave of court to amend their complaint—they could have amended as of right or moved to amend at any point before dismissal. We needn't determine whether appellants had adequate notice of the district court's intent to dismiss because, as explained below, we conclude that the district court lacked subject-matter jurisdiction to entertain appellants' case.[1]

## II

Without subject-matter jurisdiction, a federal court is powerless to act. Accordingly, if a district court determines "at any time" that it lacks subject-matter jurisdiction, it "must dismiss the action." Fed. R. Civ. P. 12(h)(3). As particularly relevant here, "[a] court . . . lacks subject matter jurisdiction to hear a case if the requirements of Article III of the Constitution are not satisfied." *Dermer v. Miami-Dade Cty.*, 599 F.3d 1217, 1220 (11th Cir. 2010). Among other things, Article III "restricts the jurisdiction of the federal courts to litigants who have standing to sue." *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016). The existence of jurisdiction in this case—and thus the propriety of the district court's

---

[1] A dismissal for lack of subject-matter jurisdiction is reviewed *de novo*. *Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1296 (11th Cir. 2010).

*sua sponte* dismissal—turns on whether appellants established that they had standing.[2]

It is well-settled that a plaintiff must prove three elements to satisfy constitutional standing requirements:

> "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). Article III standing is determined based on the facts as they exist when the complaint is filed. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003).

Appellants have failed to show that they have standing to assert any claim against AMEX. As the district court observed, appellants' complaint contains no allegation that the subpoena about which they complain had been issued in the underlying tribal-court proceeding at the time they filed suit in federal court. Indeed, in their brief to this Court, appellants contend that when the Tribe initially

---

[2] Because standing doctrine emanates from Article III, and implicates subject-matter jurisdiction, it is a "threshold" issue that "'must be addressed prior to and independent of the merits of a party's claims.'" *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (quoting *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009)).

7

"served *notice that it intended to issue* a number of subpoenas *duces tecum* on AMEX," they "responded . . . by filing the instant case" in federal district court. Br. of Appellants at 6 (emphasis added).  Nor, significantly, did appellants allege that AMEX acknowledged or showed any intention to comply with the subpoena. And there is certainly no indication in the record here that appellants (or AMEX) ever moved to quash or otherwise contested the subpoena.  Mere speculation that AMEX *might* comply with a subpoena that had not even been issued at the time appellants filed their complaint hardly qualifies as an injury that is "actual or imminent, not conjectural or hypothetical."  Therefore, appellants' complaint fails to establish that they suffered a legally cognizable injury sufficient to satisfy Article III's standing requirements and, for this reason alone, the district court properly dismissed their action for lack of subject-matter jurisdiction.[3]

### III

For the foregoing reasons, we hold that the district court properly dismissed appellants' action for lack of standing—and thus for lack of subject-matter jurisdiction.  As already explained, the district court went on to conclude that its jurisdiction over appellants' suit was foreclosed on a second ground—namely, that appellants had failed to exhaust their tribal court remedies.  *See supra* at 5.

---

[3] Appellants now contend that at some point during the pendency of this appeal, the subpoenas were issued and served on AMEX.  *See* Br. of Appellants at 7, 12.  Even setting aside that Article III standing is properly determined based on the facts as they exist at the time the complaint is filed, appellants *still* have not alleged—let alone demonstrated—that AMEX intends (or is likely) to comply with any subpoena concerning their records.

8

Because we conclude that appellants lacked Article III standing to sue, we needn't address the exhaustion issue.

The district court's order of dismissal and order denying appellants' motion to vacate or modify are affirmed.

**AFFIRMED.**